# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **GATEHOUSE WATER LLC,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **LOST PINES GROUNDWATER** | § | |
| **CONSERVATION DISTRICT,** | § | |
| **MICHAEL TALBOT, SHERIL** | § | **No.  A-22-CV-00132-LY** |
| **SMITH, MICHAEL SIMMANG,** | § | |
| **DAVID FLEMING, HERBERT** | § | |
| **COOK, LARRY SCHATTE, KAY** | § | |
| **ROGERS, PHIL COOK, BILLY** | § | |
| **SHERRILL, CARL STEINBACH,** | § | |
| **MELISSA COLE, THOMAS** | § | |
| **ARSUFFI, ELVIS HERNANDEZ,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendants' motion to dismiss, Dkt. 30; and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation.

## I.      BACKGROUND

Plaintiff Gatehouse Water, LLC ("Gatehouse") initiated this lawsuit against Defendants Lost Pines Groundwater Conservation District (the "District"), Michael Talbot, Billy Sherrill, Carl Steinbach, Michael Simmang, Sheril Smith, David

1

Fleming, Herbert Cook, Larry Schatte, Kay Rogers, Phil Cook, Melissa Cole,[1] Thomas Arsuffi, and Elvis Hernandez (the "Individual Defendants," and together with the District, "Defendants").[2] Gatehouse is a Texas limited liability company that acquired certain municipal wells, groundwater leases, and permits from its predecessor-in-interest Forestar (USA) Real Estate Group, Inc. ("Forestar"), which Gatehouse alleges granted it a constitutionally protected interest in the groundwater. Dkt. 29, at 17-18, 27.

The operating permits Gatehouse acquired from Forestar included a special condition ("Special Condition 8") that required Gatehouse to "have a binding contract or contracts to provide at least 12,000 acre-feet of water per year" by the fifth anniversary date of the issuance of the permit. Dkts. 29-9 at 16; 30-1, at 18. Gatehouse acknowledges that the five-year anniversary of the permits was January 21, 2021, for certain of the permits, and January 26, 2021, for others. Dkts. 29, at 27; 29-9; *see also* Dkt. 30-1. After Gatehouse sought to renew the permits in November 2020 "without any amendment to the terms and conditions" of the permits, the District renewed the permits but indicated that permits remained subject to the deadline contained in Special Condition 8—which Gatehouse understood to mean the permits were only "renewed in part." Dkts. 29, at 27-27; 29-13; 29-14. Gatehouse then

---

[1] Gatehouse brings claims against Defendants Michael Talbot, Billy Sherrill, Carl Steinbach, Michael Simmang, Sheril Smith, David Fleming, Herbert Cook, Larry Schatte, Kay Rogers, Phil Cook, and Melissa Cole in their official and individual capacities as directors of the Lost Pines Groundwater Conservation District. Dkt. 29, at 1-2.
[2] Gatehouse brings claims against Thomas Arsuffi and Elvis Hernandez in their official capacities as directors of the Lost Pines Groundwater Conservation District. Dkt. 29, at 2.

sought to modify Special Condition 8, which the District denied "without complying with its own Rules." Dkts. 29, at 28-33; 29-10; 29-20.

In the absence of a modification to Special Condition 8, Gatehouse presented a contract with Central Texas Water Supply Corporation ("CTWSC") within the five-year deadline that provided for the sale of all its permitted production for 2021. Dkt. 29, at 29-30. The District then suspended Special Condition 8 to evaluate the validity of the contract with CTWSC, and ultimately found that the contract did not comply with Special Condition 8—which effectively halted Gatehouse's ability to produce and transport groundwater under its permits. Dkts. 29, at 30-33, 38-39; 29-1; 29-2; 29-3; 29-20; 29-22. Gatehouse alleges that its permits are the only operating permits ever issued by the District that imposed an obligation such as that found in Special Condition 8. Dkt. 29, at 37.

Gatehouse brings eight causes of action based on what it considers to be the Defendants' unlawful and ultra vires actions regarding its permits, which Gatehouse alleges violated its state and federal rights. Dkt. 29, at 43-94. Defendants moved to dismiss[3] Gatehouse's complaint for lack of subject matter jurisdiction and for failure to state a claim. Dkt. 30. Gatehouse filed a response,[4] Dkt. 38, and Defendants filed

---

[3] Defendants filed their 60-page motion to dismiss without requesting leave from the Court to exceed the page limits imposed by the local rules. W. D. Tex. Loc. R. CV-7(C)(1) ("motions are limited to 20 pages"). While the undersigned will use his discretion to grant Defendants leave to exceed the page limits, the undersigned cautions Defendants against submitting such voluminous filings without first seeking leave from the Court.

[4] Gatehouse likewise failed to request leave to exceed the page limits imposed on their response by the local rules. W. D. Tex. Loc. R. CV-7(D)(3). The undersigned uses his discretion to grant Gatehouse leave to exceed the page limits, and similarly cautions Gatehouse against failing to seek leave from the Court in the future.

a reply. Dkt. 42. The undersigned will address the arguments presented in the parties' briefing below.

## II.     LEGAL STANDARDS

### A.     12(b)(1)[5]

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject-matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id*. In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts

---

[5] Defendants offer no substantive argument under Rule 12(b)(1), instead repeatedly stating that they "alternatively, if necessary, [move to dismiss] under Rule 12(b)(1))." Dkt. 30, at 48, 58. The undersigned does not perceive any deficiency with this Court's subject matter jurisdiction over this case and declines to engage in a "guessing game" to attempt to determine on what basis Defendants believe subject matter is lacking here. *City of Sachse, Tex. v. Kansas City S.*, 564 F. Supp. 2d 649, 653 (E.D. Tex. 2008) ("the court has an affirmative duty to raise the issues regarding subject matter jurisdiction, sua sponte, whenever a problem with subject matter jurisdiction is perceived").

evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

**B.    12(b)(6)**

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its

proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III.   DISCUSSION

#### A.   Immunities

Defendants move to dismiss Gatehouse's claims against the Individual-Capacity Defendants[6] as barred by either absolute legislative immunity, quasi-judicial immunity, or qualified immunity. Dkt. 30, at 48-57. Gatehouse responds that none of the categories of immunity propounded by Defendants are applicable here. Dkt. 38, at 19-25. The undersigned will assess each of the individual immunities proposed by Defendants below.

---

[6] For the purposes of this section, the undersigned will refer to the Individual Defendants who face claims in their individual capacities, Michael Talbot, Billy Sherrill, Carl Steinbach, Michael Simmang, Sheril Smith, David Fleming, Herbert Cook, Larry Schatte, Kay Rogers, Phil Cook and Melissa Cole, as the "Individual-Capacity Defendants."

     1.    *Legislative Immunity*

First, Defendants argue that the Individual-Capacity Defendants are immune from suit under the doctrine of absolute legislative immunity because their challenged actions were "functionally legislative" since they cast votes on Gatehouse's permits as part of a governmental body. Dkt. 30, at 50. Gatehouse responds that the Individual-Capacity Defendants are not entitled to legislative immunity because existing case law gives "no indication that legislative immunity should apply to a groundwater conservation district's decision regarding the issuance, amendment, or denial of permits." Dkt. 35, at 19. The undersigned agrees.

While legislative immunity protects not only legislators, but also officials performing "legislative functions," courts have made a distinction between establishing a policy, act, or law and enforcing or administering it when determining whether legislative immunity applies. *Hughes v. Tarrant Cnty., Tex.*, 948 F.2d 918, 920 (5th Cir. 1991) (finding that legislative immunity did not apply because actions by county officials were "not based on general facts regarding any policy, but instead, [were] based on specific facts of an individual situation related to the district court clerk"). The Fifth Circuit uses two tests to determine whether a defendant's actions were "functionally legislative" so as to warrant protection under the doctrine of absolute legislative immunity. *Id.*

The first test focuses on the nature of the underlying facts used to reach the challenged action or decision. *See id.* If the underlying facts on which the decision is based pertain to "legislative facts," such as "'generalizations concerning a policy or

state of affairs,'" the action is legislative. *Id.* (citation omitted). If the underlying facts are more specific and relate to a particular individual or situation, the action is not legislative. *Id.* The second test focuses on the "particularity of the impact" of the challenged action or decision. "If the action involves establishment of a general policy, it is legislative." *Id.* (citation omitted). If the challenged action or decision singles out "specific individuals and affect[s] them differently from others, it is administrative." *Id.* (citation omitted).

Here, Gatehouse challenges the Individual-Capacity Defendants' decisions regarding Gatehouse's operating permits, which were rendered based on facts specific to Gatehouse and only impacted Gatehouse's groundwater rights. *See* Dkts. 29; 38, at 19-20; *Hughes*, 948 F.2d at 920 ("If the facts used in the decision-making are more specific, such as those that relate to particular individuals or situations, then the decision is administrative." (internal citation removed)). Indeed, Defendants even admit in their reply that "the more specifically focused an action is, the more likely it is administrative (not legislative) in nature." Dkt. 42, at 10. The undersigned thus finds that the Individual-Capacity Defendants are not entitled to legislative immunity under either test propounded by the Fifth Circuit given that their decisions regarding Gatehouse's permits "did not involve generalizations concerning a policy or state of affairs." *Hughes*, 948 F.2d at 920 (internal citation removed).

### 2.    *Quasi-Judicial Immunity*

Defendants next argue that the Individual-Capacity Defendants are shielded from Gatehouse's individual capacity claims against them under the doctrine of

quasi-judicial immunity because they "act and vote as a body to decide whether a permittee can pump groundwater." Dkt. 30, at 51-53. Gatehouse responds that the factors federal courts use to determine whether officials are entitled to quasi-judicial immunity do not weigh in favor of the Individual-Capacity Defendants being protected from suit by such a doctrine. Dkt. 35, at 21-24. In their reply, Defendants broadly assert that quasi-judicial immunity is "available to public officers in Texas who are engaged in discretionary acts." Dkt. 38, at 11 (citing *Gleason v. Beesinger*, 708 F. Supp. 157, 159 (S.D. Tex. 1989)). Although it is unclear whether Defendants believe the Individual-Capacity Defendants are entitled to quasi-judicial immunity under state or federal law,[7] the undersigned will address both forms of immunity out of an abundance of caution.

Under Texas law, "quasi-judicial" or "official" immunity is a form of common law immunity afforded to public officers and employees for tortious acts[8] done within the course and scope of their duties, while performing discretionary functions, and acting in good faith. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994). The burden is on the one asserting the affirmative defense of "official immunity" to plead and prove all elements. *Perry v. Texas A & I Univ.*, 737 S.W.2d 106, 110 (Tex. App. 1987—Corpus Christi, writ ref'd n.r.e.).

---

[7] In a footnote in their reply, Defendants insist the "have asserted both versions of 'quasi-judicial immunity,'" despite the fact that their motion to dismiss focuses almost entirely on quasi-judicial immunity under state law, with the exception of a passing citation to one federal case—which is addressed later in this section. Dkts. 30, at 51-53; 42, at 11.

[8] The undersigned finds it curious that Defendants limit their citations regarding quasi-judicial immunity to those involving the state law version of quasi-judicial immunity given that Gatehouse does not appear to bring any state law tort claims against the Individual-Capacity Defendants. *See* Dkts. 29, at 43-82; 30, at 51-53; 42, at 10-11.

Here, Defendants have failed to meet their burden of demonstrating that the Individual-Capacity Defendants are entitled to quasi-judicial immunity under Texas law. *See id.*; *Chambers*, 883 S.W.2d at 653. Gatehouse specifically pleaded that the Individual-Capacity Defendants acted in bad faith in applying Special Condition 8 to their permits, declining to modify the permits, and finding that its contract with CTWSC did not fulfill the condition. *See, e.g.,* Dkt. 29 at 17 (calling Individual Defendants' actions "erroneous, illegal, wrongful" and alleging "discriminatory intent and effect" of Special Condition 8); *see id.* at 61 (alleging that Defendants acted "knowingly, and with the clear and unapologetic intent to prevent GateHouse from producing its privately owned groundwater"). Moreover, Defendants did not attach any evidence to their motion rebutting the allegation that the Individual-Capacity Defendants did not act in good faith when they imposed burdens on Gatehouse's groundwater rights. *See* Dkt. 30. Resolving all factual disputes in favor of Gatehouse, as the Court must at the motion to dismiss phase, the undersigned finds that Defendants have not demonstrated that the Individual-Capacity Defendants are entitled to quasi-judicial immunity under state law because they failed to establish the elements of official immunity as a matter of law.

Under federal law, "[a]bsolute quasi-judicial immunity protects officials that "perform functions comparable to those of judges and prosecutors." *Da Vinci Inv., Ltd. P'ship v. Parker*, 622 F. App'x 367, 373 (5th Cir. 2015). While it is unclear whether Defendants even intended to raise the issue of federal quasi-judicial immunity under

federal law,[9] out of an abundance of caution the undersigned finds that the Individual-Capacity Defendants have not demonstrated their entitlement to such a defense at this time. Courts evaluate six factors[10] to determine whether a defendant is immune from suit based on the doctrine of quasi-judicial immunity, which the undersigned notes Defendants did not identify or address in their briefing. *See* Dkts. 30; 38. Applying the quasi-judicial immunity factors, as well as existing precedent, to the current case, the undersigned finds that the Individual-Capacity Defendants are not entitled to quasi-judicial immunity under federal law. *Beck*, 204 F.3d at 634.

As Gatehouse notes in its response, Defendants did not offer any argument related to the factors federal courts use to assess the applicability of quasi-judicial immunity. *See* Dkts. 30; 38, at 22. In their reply, Defendants insist that because the Individual Defendants "acted in a discretionary manner" with regard to the operating permits, they are entitled to quasi-judicial immunity. Dkt. 42, at 11. Yet the discretionary authority afforded to the District and its officials is only one of six factors the undersigned must assess in determining whether quasi-judicial immunity

---

[9] Indeed, Defendants cite one case where a court addressed quasi-judicial immunity under federal law, yet misstate the findings of that court by stating in a parenthetical that it "extend[ed] quasi-judicial immunity to officials who perform functions similar to those of judges in similar settings," when in fact that court denied a motion to dismiss, holding that "affording absolute immunity is not appropriate at this stage of the litigation." *G & H Dev., LLC v. Penwell*, 9 F. Supp. 3d 658, 668 (W.D. La. 2014).

[10] Courts evaluate a non-exhaustive list of factors to determine whether non-judicial actors perform "quasi-judicial" functions, and thus are entitled to absolute immunity: (1) the need to assure that the individual can perform his functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal. *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 634 (5th Cir. 2000) (citing *Butz v. Economou*, 438 U.S. 478, 512 (1978)).

applies to the Individual-Capacity Defendants. *See Beck*, 204 F.3d at 634. Indeed, in the one case Defendants cite in their motion to dismiss addressing quasi-judicial immunity under federal law, the court found that zoning board officials were not entitled to quasi-judicial immunity at the motion to dismiss phase where plaintiff alleged that the zoning board's decision arose from "a public hearing pursuant to the [zoning board]'s administrative/executive capacity," which suggested that it "may not have been insulated from political influence." *G & H Dev.*, 9 F. Supp. 3d at 668.

Here, similarly, Gatehouse alleges that the Individual Defendants' decisions regarding their permits were politically motivated and that the hearings regarding their permits were public hearings that were not quasi-judicial in nature. *See* Dkt. 29, at 27-43 ("At the time the Board members were making decisions about whether the GateHouse Contract satisfied Special Condition No. 8, some of those members had personal or professional interests in direct conflict with GateHouse's interests."). Moreover, as Gatehouse points out, the Texas Water Code explicitly allows lawsuits to be brought "against the district or its directors to challenge the validity of the law, rule, or order" regarding a permit application, and recognizes that immunity for district board members only applies where such individuals have complied with "laws relating to conflicts of interest, abuse of office, or constitutional obligations." Dkt. 38, at 23; Tex. Water Code §§ 36.251(a), 36.066(a). The undersigned thus finds that at this time the Individual-Capacity Defendants "are not entitled to quasi-judicial immunity" based on the allegations presented in Gatehouse's complaint, though of course "[a]fter the benefit of discovery, the parties may revisit the issue of immunity,

whether it be absolute or qualified, in the form of a Rule 56 motion for summary judgment." *G & H Dev.*, 9 F. Supp. 3d at 668.

### 3.   *Qualified Immunity*

Defendants finally argue that the Individual-Capacity Defendants "are still entitled to immediate dismissal in their individual capacities with prejudice under qualified immunity." Dkt. 30, at 53-57. Gatehouse responds that the Individual-Capacity Defendants are not protected under qualified immunity because the Fifth Circuit has previously held that groundwater conservation district directors are not entitled to qualified immunity for intentionally treating a property owner "differently than other similarly situated persons when [a] district denied his application for a groundwater production permit," as is alleged here. Dkts. 29, at 78-79; 35, at 24 (citing *Stratta v. Roe*, 961 F.3d 340, 358-61 (5th Cir. 2020)). Defendants respond that the court in *Stratta* did not assess whether the groundwater conservation district there was operating in its commercial or sovereign role, and as such is not applicable here—yet fails to cite any authority standing for the proposition that such a distinction is relevant to the qualified immunity inquiry. Dkt. 42, at 11-12.

The defense of qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kinney v. Weaver*, 367 F.3d 337, 349 (5th Cir. 2004) (internal citation omitted). When considering a qualified immunity defense raised in the context of a motion to dismiss, the Court must determine whether "the plaintiff's

pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (internal citation removed). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id*.

Here, Gatehouse has pleaded sufficient facts that, when taken as true, suggest that the Individual-Capacity Defendants are liable for the alleged harm, and are not entitled to the defense of qualified immunity. *See* Dkt. 29. As explained below, Gatehouse sufficiently pleaded in its amended complaint that the Individual-Capacity Defendants violated Gatehouse's Fifth and Fourteenth Amendment rights by wrongfully taking Gatehouse's constitutionally protected property interest in their groundwater without adequate compensation and violated Gatehouse's equal protection rights by treating it differently than other permit holders. Dkt. 29, at 69-81.

## B.   Takings Claims

Defendants move to dismiss Gatehouse's fourth and seventh causes of action, which allege that Defendants' refusal to recognize its contract with CTWSC, or modify Special Condition 8 in its permits constitutes a taking of Gatehouse's interest in its groundwater in violation of its Fifth Amendment and state law rights.[11] Dkts.

---

[11] Because "case law on takings under the Texas Constitution is consistent with federal jurisprudence," the undersigned "consider[s] the federal and state takings claims together, as the analysis for both is complementary." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 477 (Tex. 2012).

29, at 69-77; 30, at 17-19. Specifically, Defendants argue that Gatehouse's challenge to the District's imposition of Special Condition 8 in the operating permits is in fact a contract claim because the District was acting in its commercial, rather than sovereign, capacity when it imposed such a condition on the permits. Dkt. 30, at 17-19. Gatehouse responds that it has properly stated a takings claim under federal and state law because it alleged that: (1) it has a constitutionally protected interest in the groundwater at issue; and (2) Defendants have deprived Gatehouse of "all rights and benefits" under its groundwater leases. Dkt. 38, at 17-19. The undersigned agrees.

The crux of Defendants' challenge to Gatehouse's takings claims is that they sound in contract, rather than federal law, because "Gatehouse's alleged injury arises from the application of a negotiated contract term in" a settlement agreement executed between the District and Gatehouse's predecessor-in-interest. Dkts. 30, at 32; 30-1. As such, Defendants' argument goes, the District's decisions regarding Special Condition 8 are "commercial," rather than "sovereign," acts that may not be challenged through a federal constitutional claim. Dkt. 30, at 33 (citing *Preston Hollow Capital, L.L.C. v. Cottonwood Dev. Corp.*, 23 F.4th 550, 553 (5th Cir. 2022)). Yet as Gatehouse points out, its claimed groundwater rights do not arise from the settlement agreement, and its takings claims do not arise out of the District's compliance with the settlement agreement, but rather from Defendants' decisions to enforce Special Condition 8 in such a way as to deprive Gatehouse of the constitutionally protected property rights as secured through the groundwater leases. *See* Dkts. 29; 35, at 6-14.

The undersigned finds that the District was not acting within a "commercial" capacity when it made decisions regarding Gatehouse's permits. Defendants rely heavily on *Preston Hollow Capital, L.L.C. v. Cottonwood Dev. Corp.*, 23 F.4th 550, 553 (5th Cir. 2022), to support their argument that Gatehouse may not state any takings claims against them because they acted in their commercial capacity pursuant to a contract between the parties. Dkt. 30, at 31-34. Yet in *Preston Hollow*, plaintiff finance company brought a lawsuit against a city based on the city's alleged breach of a loan agreement between the parties. *Preston Hollow*, 23 F.4th at 553. Here, in contrast, Gatehouse does not allege that Defendants breached the settlement agreement, but rather that Defendants' decision not to recognize Gatehouse's compliance with Special Condition 8, and not to modify the condition or allow Gatehouse to comply with it through its contract with CTWSC, effectuated a taking of Gatehouse's pre-existing groundwater rights. Dkt. 29, at 17, 31, 69-77.

Moreover, Defendants' alleged actions regarding Gatehouse's groundwater rights arise from their statutory duties under the Texas Water Code and were not those akin to the "mere withholding of property or performance in a contract dispute in the manner [of] a private individual." *City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 516 (Tex. App. 2014); *Preston Hollow*, 23 F.4th at 552 ("actions such as contract termination or detention of property under the contract that would constitute a simple breach of contract when a non-governmental entity is involved do not become a constitutional violation simply because the contracting party is a

16

municipality" (internal citation omitted)). The District Court should deny Defendants' motion to dismiss Gatehouse's taking claims.

### C.    Equal Protection Claim

Defendants also move to dismiss Gatehouse's "class of one" equal protection claim, though the winding nature of their argument makes it unclear on what basis Defendants believe the claim to be deficient. Dkt. 30, at 34-38. At one point, Defendants appear to argue that Gatehouse's equal protection claim is "subsumed" by its takings claims, yet Gatehouse cites a case addressing "an unripe takings claim." Dkt. 30, at 37 (citing *R Bend Estates II, LLC v. St. John the Baptist Par.*, No. CV 15-4951, 2016 WL 4087490, at *3 (E.D. La. Aug. 2, 2016)). The undersigned is perplexed by such an argument given that nowhere do Defendants argue that Gatehouse's takings claim is not ripe. *See* Dkt. 30. Moreover, Gatehouse clearly alleges rights "rooted in" equal protection, as opposed to takings, by alleging that it was treated differently than all other permit recipients in the district through the imposition of Special Condition 8. Dkt. 29, at 79-80.

Defendants also appear to halfheartedly argue that Gatehouse has "failed to state a claim for relief that is plausible on its face," without specifying what it believes to be deficient about Gatehouse's equal protection claim. Dkt. 30, at 38. To state a "class of one" equal protection claim, a plaintiff must plead that she was "intentionally treated differently from others similarly situated," and that there was no "rational basis" for this difference in its treatment. *Stratta*, 961 F.3d at 360. Here, Gatehouse alleges that it was treated differently from other entities that have filed

17

permit applications with the District, and that such differential treatment lacked "cause or good reason." Dkt. 29, at 79-80 (alleging that the District treated it differently by not imposing Special Condition 8 on any others seeking permits and denying its permit applications when the District has "granted all other[s]"). As such, the undersigned finds that Gatehouse has sufficiently stated a claim for violation of its equal protection rights against the District and the Individual Defendants in their individual capacities.

However, the undersigned agrees with Defendants that Gatehouse may not maintain its equal protection claim against the Individual Defendants in their official capacities. *U.S. ex rel. Bias v. Tangipahoa Par. Sch. Bd.*, 816 F.3d 315, 322 (5th Cir. 2016) (affirming dismissal of official-capacity claims because the official-capacity claims were "redundant" of claim against entity itself). As such, the undersigned will recommend that the District Court dismiss Gatehouse's equal protection claims against the Individual Defendants to the extent such claims are brought against them in their official capacities.

### D.   Procedural Due Process Claim

Defendants also argue that Gatehouse's procedural due process claim should be dismissed because it is "ancillary to and arises from its takings claim," and because Gatehouse admits in its complaint that it was provided with actual notice of and an opportunity to be heard at the "multiple meetings" at which the District made decisions about the operating permits. Dkt. 30, at 36-37. To state a claim for violation of procedural due process rights, a plaintiff must plead that she has a liberty or

property interest which has been interfered with by the State, and that the procedures attendant upon that deprivation were constitutionally insufficient. *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 229 (5th Cir. 2020).

While Gatehouse has certainly alleged that it has a property interest in groundwater through its leases, which Defendants interfered with by denying its permit renewal, it has failed to adequately plead that the procedures Defendants utilized to reach such a result were constitutionally deficient. Dkt. 29, at 78. Gatehouse alleges the Defendants violated its procedural due process rights because they "ignored them throughout their conduct of the proceedings and their decision-making in the uncontested matters related to the GateHouse Permits that have been brought before them." Dkt. 29, at 78. In its response, Gatehouse purports to point to two paragraphs of its amended complaint to demonstrate that Defendants did not allow Gatehouse to "be apprised of evidence contrary to its position," or the "right to request a contested case hearing," yet the sections it cites from its amended complaint merely recite case law or state "established procedural due process principles" without reference to any factual allegations. Dkts. 29, at 68; 78; 30, at 16.

Moreover, as Defendants point out, Gatehouse fails to allege how the procedures Defendants utilized were constitutionally deficient given that Gatehouse does not allege that it lacked notice or an opportunity to be heard at the meetings where Defendants took actions that allegedly deprived Gatehouse of its property interests. Dkt. 29, at 29-33, 37-39. While Gatehouse claims that Defendants failed to follow their own rules, this does not necessarily render their procedure

constitutionally flawed given that Gatehouse acknowledges it had notice and an opportunity to be heard at the District meetings regarding its permits. *Id.* at 32 (admitting that during July 27, 2021, meeting, where District determined that CTWSC contract did not fulfill Special Condition 8, the District took "public comment, and comment from GateHouse representatives"); *Reynolds v. City of Com., Tex.*, No. 3:19-CV-01577-E, 2020 WL 1915713, at *4 (N.D. Tex. Apr. 17, 2020) (dismissing procedural due process claims where plaintiff did not "allege any facts to show he was not provided the required notice of or an opportunity to be heard"). Gatehouse's procedural due process claim should be dismissed.

E.     **Substantive Due Process Claim**

Defendants also move to dismiss Gatehouse's substantive due process claims, arguing that "Gatehouse has not and cannot allege that the District's acts violated a separate and distinct protection afforded by the Fourteenth Amendment's protection of substantive due process," and once again argue that Gatehouse's substantive due process claim is subsumed by its Fifth Amendment takings claim. Dkt. 30, at 35-36. Gatehouse responds that it has sufficiently pleaded its due process claim against Defendants by alleging that they "interfered with its constitutionally protected property interest in groundwater," and that "the District's acts interfering with GateHouse's rights lack any rational basis." Dkt. 38, at 16-17. In its complaint, Gatehouse alleges that Defendants deprived it of its "protected property interest" in groundwater when it determined, in an "arbitrary and capricious" manner, that Gatehouse had not complied with Special Condition 8. Dkt. 29, at 78-79.

Regardless of whether Gatehouse's substantive due process claim is subsumed by its Fifth Amendment takings claim, the undersigned finds that Gatehouse has not stated a claim for relief for violation of its substantive due process rights. Defendants argue that Gatehouse's amended complaint does not allege that that the District "exercise[d] sovereign authority (arbitrarily or otherwise)" or "enact[ed] vague or retroactive rules applicable" to the Gatehouse permits. *Id.* at 36. A substantive due process claim requires a plaintiff to show that the challenged government action is arbitrary, unreasonable, or has no relationship to a legitimate government interest. *See Simi Inv. Co. v. Harris Cnty., Tex.*, 236 F.3d 240, 249 (5th Cir. 2000) (stating government action comports with substantive due process if "rationally related to a legitimate government interest" and impinges upon it if "arbitrary or capricious").

While Gatehouse certainly alleges that Defendants' actions were arbitrary in nature, its amended complaint falls short of alleging facts "that would show" that the District's imposition of Special Condition 8, refusal to amend the permits to allow Gatehouse to comply with the condition, and determination that Gatehouse did not comply with the condition through its CTWSC contract were "not rationally related to th[e] District's legitimate government interest" in regulating the production of groundwater through the permitting process. Dkt. 29, at 79; *Md. Manor Assocs. v. City of Houston*, 816 F. Supp. 2d 394, 407 (S.D. Tex. 2011); *Simi*, 236 F.3d at 251 ("The question is only whether a rational relationship exists between the [policy] and a conceivable legitimate objective. If the question is at least debatable, there is no substantive due process violation." (internal citation removed)).

21

In its response, Gatehouse points to certain paragraphs in its amended complaint that it insists would show "the District's acts interfering with GateHouse's rights lack any rational basis," yet all its citations are to portions of its complaint unrelated to its substantive due process claim, or merely recite Gatehouse's general contention that the District "violated GateHouse's substantive and procedural due process rights" when it declined to amend the operating permits, or follow its own rules when making decisions regarding Gatehouse's permits. Dkt. 38, at 17; *see, e.g.,* Dkt. 29, at 85. Yet as Defendants point out, the conduct alleged is not "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience," and the undersigned notes that the District's failure to follow its own rules does not necessarily violate due process. *See* Dkts. 29; 42, at 9; *Reyes v. N. Texas Tollway Auth.,* 861 F.3d 558, 562 (5th Cir. 2017) (noting that when assessing substantive due process claim based on government actions with "more individualized" impact, courts ask whether the alleged conduct "shocks the conscience"); *see also Md. Manor,* 816 F. Supp. 2d at 408 ("The City does not violate due process merely because it acts in a manner not authorized by an ordinance."). The District Court should dismiss Gatehouse's substantive due process claim.

### F.   Ultra Vires Claims

Finally, Defendants move to dismiss Gatehouse's ultra vires claims against the Individual Defendants, arguing that Gatehouse failed to "plead facts showing that the Directors acted beyond their lawful authority or failed to perform a purely ministerial duty[.]" Dkt. 30, at 48. Gatehouse purports to bring three ultra vires

claims against Defendants based on their imposition of Special Condition 8 on Gatehouse, determination that Gatehouse's contract with CTWSC did not comply with Special Condition 8, and the lack of "substantial evidence" to support such a finding. Dkt. 29, at 43-69. Gatehouse did not respond to Defendants' arguments regarding its ultra vires claims against the Individual Defendants, which the undersigned finds curious given that Gatehouse filed a response to the motion to dismiss that exceeded the page limits imposed by the local rules. *See* Dkt. 38.

Given Gatehouse's lack of response to Defendants' arguments on their ultra vires claims, the undersigned will recommend that the District Court grant Defendants' motion to dismiss the ultra vires claims against the Individual Defendants. *Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." (citations omitted)); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument). Counts 1, 2, and 3 of Gatehouse's complaint, as against the Individual Defendants, should be dismissed.

## IV.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Defendants' motion to dismiss, Dkt. 30. Specifically, the District Court should

**GRANT** Defendants' motion to dismiss with regard to Gatehouse's equal protection claims against the Individual Defendants in their official capacities, ultra vires claims against the Individual Defendants, procedural due process against Defendants, and substantive due process against Defendants. The undersigned recommends that Gatehouse's equal protection claim against the Individual Defendants in their official capacities, procedural due process, and substantive due process claims be **DISMISSED WITH PREJUDICE,** while its ultra vires claims against the Individual Defendants should be **DISMISSED WITHOUT PREJUDICE**. Defendants' motion to dismiss should be **DENIED** in all other respects.

The referral of this case to the Magistrate Court should now be canceled.

## V.    WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district

court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985);

*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED August 15, 2022.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATGE JUDGE